IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
_____

SUSAN LEE QUAGON,

                                                OPINION AND ORDER

                Plaintiff,

v.                                                   21-cv-519-slc

KILOLO KIJAKAZI,[1]
Acting Commissioner of Social Security,

                Defendant.
_____

       Plaintiff Susan Lee Quagon brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of an adverse decision of the acting commissioner of Social Security. Quagon argues primarily that this case must be remanded for further proceedings because: (1) the administrative law judge (ALJ) who reviewed her claim at the administrative level did not adequately develop the record with respect to her upper extremity limitations; and (2) some of the ALJ's findings in support of her residual functional capacity assessment are not supported by substantial evidence in the record. As explained below, neither of these arguments is persuasive. Accordingly, I will affirm the acting commissioner's decision.

       The following facts are drawn from the administrative record ("AR"):

## FACTS

**I. Background**

       Susan Lee Quagon has a high school education and past experience working in the maintenance department for Lac Courte Oreilles Housing. In September 2018, she began having neck and left shoulder pain after a tree fell on her. Although Quagon recovered from these injuries, she reinjured herself in November 2018 and again in April 2019 after engaging in strenuous lifting activities. In March 2019, at the age of 47, Quagon applied for supplemental

---

[1]The court has changed the caption to reflect Kilolo Kijakazi's appointment as acting commissioner.

security income benefits alleging disability beginning November 2, 2018, as a result of back and shoulder problems, asthma, rheumatoid arthritis, depression and anxiety.[2] AR 187-202; 221. She later amended her alleged onset date to March 25, 2019. AR 36, 40.

The Social Security Administration denied Quagon's application initially and on reconsideration. Quagon filed a request for a hearing, which was scheduled for December 1, 2020. Shortly before the hearing, Quagon's counsel asked the ALJ for an additional 30 days to submit medical records from Essentia Health-Spooner Clinic and Essentia Health-Duluth Clinic. In the alternative, counsel asked the ALJ to issue a subpoena for the records, but stated that their "primary request" was for the additional 30 days for Quagon to provide the records herself. AR 281-82.

## II. Administrative Hearing

Appearing on Quagon's behalf at the telephonic hearing on December 1, 2020, Quagon's counsel stated that her firm was "still waiting on" records from Essentia Health-Duluth Clinic. AR 35. She did not say anything about the records from Spooner Clinic. Counsel also stated that Quagon was scheduled for cervical fusion surgery in January 2021 and that she wanted to submit those records as well. The ALJ agreed to leave the record open for 45 days after the hearing so counsel could submit the outstanding evidence. AR 36.

At the hearing, the ALJ heard testimony from Quagon and from vocational expert (VE) Mary Harris. Quagon testified that she no longer does any housework, cooking or driving because of her neck and shoulder problems. She lives with her 19-year-old son who cooks and helps around the house. AR 44-45. Quagon reported that she could not lift her left shoulder above chest level or rotate her head side-to-side or up and down, and she had numbness in her

---

[2]On appeal, Quagon challenges only the ALJ's findings with respect to her neck and shoulder impairment; accordingly, I discuss only that evidence.

2

hands and fingertips. AR 46-47. Quagon said she was scheduled for neck surgery which her doctors said might help with the weakness and numbness in her left arm, and that she might have shoulder surgery after that. AR 47.

The ALJ called Harris to testify as a neutral vocational expert. The ALJ proposed a hypothetical incorporating a number of limitations that would she would ultimately adopt as the operative residual functional capacity finding. Specifically, she asked Harris to assume a person of Quagon's age, education, and past work experience, who was capable of performing work at the light exertional level with the following additional limitations:

> Occasional climb stairs/ramps; never climb ladders/ropes/scaffolds; occasional stoop, kneel, crouch, and crawl; occasional overhead reaching with the non-dominant upper extremity and frequent reaching all other directions; frequent fingering and handling with non-dominant upper extremity.

AR 52.

Harris testified that a person with such limitations would be unable to perform Quagon's past relevant work, but could perform other work in the national economy, including as a recreation aide, routing clerk, or sales attendant. AR 53. The ALJ then asked whether those jobs would still be available if the person was unable to perform any overhead reaching with the nondominant arm, could only reach occasionally in all other directions, and could only occasionally finger and handle with the nondominant hand. *Id*. Harris responded that there were no jobs available in the national economy for a person so limited. AR 54.

After the hearing, Quagon submitted additional medical records from Essential Health-Duluth Clinic, AR 618-23, and St. Mary's Medical Center. AR 624-59. The records showed that Quagon had undergone cervical fusion and discectomy surgery at the C6/C7 level on January 6, 2021. On January 19, 2021, Quagon's counsel sent a letter advising the ALJ that her office had "no further records to submit," and "[u]nless there is further pending evidence from a

3

consultative examination or from medical or vocational experts, we request that the post-hearing development stage of this claim be closed and a decision made at your earliest convenience." AR 290.

### III. ALJ Decision

More than two months later, on April 5, 2021, the ALJ issued a decision denying Quagon's application. AR 11-30. Having considered all of the medical evidence, including the post-hearing records, the ALJ found that Quagon had severe impairments, which included rotator cuff tendinitis, a left shoulder labrum tear and degenerative disc disease of the lumbar spine. However, the ALJ found that none of these impairments met or medically equaled the severity of any listed impairment. AR 17.

The ALJ then considered all of the evidence in the record to determine Quagon's residual functional capacity ("RFC"). Reviewing the medical evidence concerning Quagon's neck and shoulder complaints, the ALJ noted that Quagon was injured in September 2018 when a tree fell on her, but x-rays of her left shoulder at that time were negative, and CT of the cervical spine showed only mild degenerative disc disease. AR 21 (citing AR 453-54). Quagon then had recurrences in November 2018 and April 2019 associated with lifting activities, with an April 2019 MRI showing moderate diffuse bulging disc at C6-C7 and mild degenerative changes at C5-C6. *Id*. (citing AR 414). Examination by Dr. Megan Popp, a physical medicine specialist, on May 1, 2019, noted that Quagon had left-sided neck tenderness and pain when lifting her arm above shoulder height, but her cervical range of motion was within functional limitations, her gait was overall steady, and sensation was grossly intact throughout her arms. AR 21 (citing AR 401). The ALJ noted that Dr. Popp recommended that Quagon engage in physical therapy and get an epidural steroid injection, but Quagon attended only one physical therapy

4

appointment and there was no evidence that she got an epidural steroid injection. AR 21-22 (citing AR 480).

The ALJ observed that there was then a "gap in treatment" for Quagon's left shoulder and neck complaints until September 2020, when Quagon saw orthopedist Dr. Scott Warren. AR 22. At that time, examination showed fair passive range of motion with some discomfort at the extremes, positive Tinel sign over the ulnar nerve at the elbow and the median nerve at the wrist, a positive wrist compression test, and hyperesthesia in all fingers. *Id*. (citing AR 597-98). The ALJ noted that Dr. Warren referred Quagon for an MRI of her left shoulder, which showed a labral tear and tendinosis. *Id*. (citing AR 606). In September 2020, Quagon also underwent a neurological evaluation for facial droop and left upper extremity weakness, during which the neurologist noted significant loss of motor strength and sensation of her left upper extremity along with spasticity and hyperreflexia; however, her right arm was completely normal. *Id*. (citing AR 622-23). As the ALJ noted, the neurologist suspected that Quagon had cervical cord compression, which was later confirmed by MRI. Quagon underwent cervical fusion surgery at C6-C7 on January 6, 2021. AR 22 (citing AR 646).

Summing up the medical records, the ALJ found they showed that Quagon had abnormalities of her cervical spine and left shoulder. AR 22. However, the ALJ noted that until September 2020, Quagon's treatment was "very sporadic," her doctors felt her symptoms were out of proportion to her injury, Quagon was not compliant with physical therapy, and there was no evidence that she underwent the recommended steroid injections. *Id*. The ALJ noted that physical examinations in 2019 showed that Quagon had functional range of motion in her cervical spine and a steady gait, but difficulty and pain with lifting her left arm. *Id*. The ALJ found that Quagon's symptoms worsened in September 2020, with documented loss of motor strength and sensation in the left upper extremity, diagnosed labrum tear and tendinosis of the left shoulder, and cervical spine surgery in January 2021. *Id*.

The ALJ noted that Quagon testified that her ability to perform daily activities was extremely limited, but the ALJ found that this testimony was not confirmed by the medical evidence as a whole. The ALJ noted that no treating or examining physician had sufficiently documented any impairment and related symptoms that would cause the persistent functional limitations alleged by Quagon. The ALJ also noted that Quagon was able to perform personal care activities, some shopping, and minimal household chores, albeit with pain. AR 23.

The ALJ discussed the prior administrative findings by the state agency medical consultants, who had concluded that Quagon was limited to light work with some postural limitations and occasional overhead reaching with the left arm. AR 23. The ALJ found these opinions to be supported by the evidence that was available at the time of their review, but she noted that the more recent evidence showed that Quagon seemed to have a worsening of her neck and left shoulder around September 2020. *Id*. Assessing Quagon's RFC, the ALJ said that she had given Quagon a "more restrictive residual functional capacity assessment to account for the worsening" in September 2020, including greater manipulative and postural limitations than found by the state agency physicians. But the ALJ did not find support in the evidence for "any additional limitations (i.e., a reduction to sedentary work)." *Id*. The ALJ observed that Quagon had recently had surgery for her neck but she had not submitted any updated treatment notes showing that the surgery did not work. *Id*. The ALJ also noted that even with a torn labrum and tendinosis of the left shoulder, Quagon "should be able to perform the lifting/carrying required for light work with only occasional overhead reaching and frequent all other reaching with her non-dominant upper extremity," noting that Quagon was able to do some cooking, perform personal care activities, and shop. *Id*.

The ALJ ultimately concluded that Quagon had the RFC to perform work at the light exertional level and could: occasionally climb stair and ramps, never climb ladders or scaffolds, frequently balance, and only occasionally stoop, kneel, crouch, and crawl. In addition, found

6

the ALJ, Quagon was limited to occasional overhead reaching with her nondominant arm and frequent reaching in all other directions, and to frequent fingering and handling with her nondominant (left) hand.[3] AR 22.

The ALJ accepted Harris's testimony that a person with Quagon's background and this RFC could perform jobs existing in significant numbers in the national economy, including representative jobs of recreation aide, routing clerk, and sales attendant. AR 24-25. As a result, the ALJ concluded that Quagon was not disabled.

After receiving the ALJ's unfavorable decision, Quagon sought review by the Appeals Council. She argued that the ALJ erred by failing to consult with a medical expert to determine whether her cervical and shoulder impairments met or equaled a listed impairment. AR 291-92. She raised no objection to the completeness of the record. The Appeals Council declined to review the ALJ's decision, making that decision the final decision of the commissioner for purposes of judicial review.

## OPINION

As already noted, Quagon raises two main challenges to the ALJ's decision, both of which she frames as failures to develop the record. First, she argues that the ALJ erred by failing to obtain the records from the Spooner Clinic, which she says constitute a "major portion" of her treatment for her left shoulder and neck and would show that the ALJ erred in finding there was a "gap in treatment" from May 2019 to September 2020. Second, Quagon argues that the ALJ drew unreasonable inferences from the record in determining her RFC.

---

[3]The ALJ also included environmental and mental restrictions, but those are not at issue.

## I. Failure to Develop the Record

Under the Social Security Act, a person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant bears the burden of proving disability, including informing the agency about or submitting all evidence that may show she is disabled. 20 C.F.R. § 416.912(a). An ALJ bears some responsibility for developing the administrative record. *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2020). That being so, the ALJ is entitled to presume that a claimant who is represented by counsel is presenting her strongest case for benefits. *Skinner v. Astrue*, 478 F.3d 836, 842 (7th Cir. 2007). Courts generally leave it up to the ALJ to determine how much evidence to gather, *Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014), and they won't disturb the ALJ's decision absent a significant omission. *Luna v. Shalala*, 22 F.3d 687, 692 (7th Cir. 1994). A plaintiff seeking remand on the ground that the ALJ failed to develop the record must establish prejudice by pointing to specific, relevant facts that the ALJ did not consider. Mere conjecture or speculation that additional evidence might have been obtained is not enough. *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009).

Quagon's challenge to the adequacy of the record is without merit, for two main reasons. First, although the Commissioner does not specifically argue waiver, Quagon effectively gave up her right to complain about the record when she represented to the ALJ on January 19, 2021 that the record was complete and her case ready for decision. *See Carr v. Saul*, 141 S. Ct. 1352, 1361 (2021) (suggesting but not deciding that claimant who fails to make "routine objections" during social security disability proceedings waives objection). Quagon does not explain why the ALJ should be faulted for failing to seek out more records after Quagon, through counsel, told her that the record was complete. *Krug v. Saul*, 846 F. App'x 403, 406 (7th Cir. 2021) (ALJ was

8

not required to obtain more medical evidence after claimant's counsel affirmed that the record was complete). Moreover, Quagon never challenged the completeness of the record on appeal to the Appeals Council.

Second, although Quagon now has new counsel, she *still* has failed to provide–or even describe the nature of–the medical records that she claims are missing. Quagon points to records indicating that Dr. Popp was the referring provider for a brain MRI in April 2020, AR 500, and for an orthopedic consult on or around September 2020; counsel *infers* from these records that Dr. Popp must have seen Quagon before making these referrals. AR 597. Just because Dr. Popp referred Quagon to other specialists for evaluation does not prove that Dr. Popp actually saw Quagon herself, particularly during the height of the COVID-19 pandemic. More importantly, for Quagon to show that she was actually prejudiced by the omission of the records, she should have submitted the actual records, or at the least, an affidavit describing the treatment that she received from Dr. Popp but that is not in the record. *Accord Nelms*, 553 F.3d at 1098 (noting that "Nelms filed, in this court, a separate appendix of medical records from 2003, 2004, and 2005 for the limited purpose of demonstrating prejudice."); *Martin v. Astrue*, 345 F. App'x 197, 202 (7th Cir. 2009) ("Martin did not identify or provide additional records during the proceedings before the Appeals Council or the district court, and even now he has not attempted to detail what additional information about his condition the ALJ would have uncovered."). By failing to do so, Quagon has failed to show that the ALJ failed to comply with her duty to develop the record.

## II.  RFC Assessment

Quagon's procedural objection aside, I turn to her substantive objections to the ALJ's decision, which relate only to the ALJ's assessment of her upper extremity limitations. Although not precisely framed as such, Quagon argues that the ALJ overlooked evidence and drew some

unreasonable inferences from the record, leading to an RFC assessment that is not supported by substantial evidence. Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Walker v. Berryhill*, 900 F.3d 479, 482 (7th Cir. 2018) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). If reasonable minds could differ as to whether Quagon is disabled, the court must uphold the ALJ's decision to deny benefits. *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012).

Quagon first argues that even if the ALJ complied with her duty to develop the record, her conclusion that there was a "gap in treatment" from May 2019 to September 2020 is unsupported by the records that were before her. Quagon notes that the ALJ failed to mention a February 2020 physical therapy appointment or the referrals from Dr. Popp discussed above. It is debatable whether these few appointments undermine the ALJ's conclusion that Quagon's treatment from May 2019 to September 2020 was "sporadic." Regardless, the ALJ did not rely only on this sporadic treatment in finding that Quagon was not disabled. Rather, in determining that Quagon had the RFC for light work with limitations on the use of her upper extremities, the ALJ also relied on: (1) the assessments from the state agency consultants, who opined that Quagon was less limited than the ALJ found; (2) observations from Quagon's providers that her symptoms were out of proportion to the objective evidence; (3) physical examinations showing pain, weakness, and diminished sensation in the left arm, but also reflecting findings such as functional or fair range of motion and full strength and normal sensation at times; (4) the absence of evidence that Quagon followed through with physical therapy or an epidural injection in 2019; and (5) Quagon's ability to perform daily and other activities, albeit with some pain.

Quagon challenges only the second finding, arguing that the ALJ improperly inferred that Quagon's doctors were questioning her honesty when what they were really doing was remarking

10

on the need for more diagnostic testing. But as the acting commissioner points out, whether or not Quagon's doctors believed her is beside the point. The ALJ was entitled to consider the consistency between the objective evidence and Quagon's subjective complaints in evaluating her ability to work, 20 C.F.R. § 416.929(c)(2); thus it was reasonable for the ALJ to consider that Quagon's own doctors could not find objective support for the severity of the symptoms that Quagon reported in November 2018 and April 2019. Moreover, Quagon has not challenged any of the ALJ's other findings, so she has waived any such challenge. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013) (claimant waives issues not raised in district court). Although the ALJ's findings are not overwhelmingly persuasive, they don't have to be. When considered as a whole, they provide adequate support for her RFC determination, even if I were to disregard the ALJ's finding of a "treatment gap."

What is more, the ALJ accepted that Quagon's neck and shoulder problems "worsened" in September 2020, and she accounted for that "worsening" by adopting greater manipulative and postural restrictions in her RFC assessment than found by the state agency medical consultants when they reviewed the record in June and September 2019, respectively. AR 23. Thus, the "gap in treatment" appears to have had little impact on the ALJ's ultimate RFC finding, insofar as she crafted that assessment based on the evidence as it existed in September 2020.

In a cursory argument, Quagon suggests that the ALJ should have gone further and adopted the more severe restrictions that she proposed to the VE in the second hypothetical, namely, no overhead reaching with the left arm, only occasional reaching in other directions, and only occasional handling and fingering with the nondominant hand. Br. in Supp., dkt. 16, at 22. To be sure, there is evidence in the record suggesting that such limitations would have been appropriate: as Quagon points out, a neurologist who examined her in September 2020 noted significant loss of motor strength and sensation of her left upper extremity along with spasticity

11

and hyperreflexia, and an orthopedist observed in October 2020 that Quagon used her right arm to raise her left arm and was unable to initiate active movement or resist forward elevation or internal or external rotation.  But as the ALJ noted, none of Quagon's treating or examining physicians had offered any assessment of Quagon's functional limitations.  *Best v. Berryhill*, 730 F. App'x 380, 382 (7th Cir. 2018) ("There is no error when there is no doctor's opinion contained in the record [that] indicated greater limitations than those found by the ALJ.").  The ALJ further noted that Quagon had undergone surgery to address the cervical compression thought to be causing many of her symptoms, but she had not submitted any treatment notes "to show the surgery did not work." AR 23.

This segués to Quagon's final argument, that it was unfair for the ALJ to infer that her surgery was successful from the lack of post-hearing records showing otherwise.  Importantly, Quagon does not contend that her surgery was *not* successful, nor has she submitted any records establishing this fact.  Instead, she argues that she could not have submitted post-surgical records because the hearing record was closed.  But once again, it was Quagon's own counsel who told the ALJ on January 19, 2021 that the record could be closed and a final decision reached.  And, as Quagon acknowledges, the ALJ never told Quagon that she could *not* submit any more records, or ask that the record be held open for some additional period of time.  Under these circumstances, I agree with the commissioner that it was reasonable for the ALJ to infer that if the surgery had *not* worked, Quagon's counsel would have submitted records to that effect. *Sample v. Shalala*, 999 F.2d 1138, 1143 (7th Cir.1993) (ALJ entitled to draw reasonable inferences from the record).

Finally, it is worth noting that to be entitled to disability benefits, a claimant bears the burden to produce evidence show that her impairment lasted or could be expected to last for a continuous period of at least 12 months. 20 C.F.R. § 416.909 ("Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous

period of at least 12 months. We call this the duration requirement."). Although the ALJ did not specifically mention the duration requirement, her finding that Quagon's condition "worsened" around September 2020 – a mere four months before the hearing – and her reference to the surgery suggests that she was not convinced that whatever limitations Quagon had in September 2020 would persist for at least 12 months. Perhaps the ALJ was mistaken and Quagon's arm weakness and numbness are worse– or no better– than before the surgery. If that is the case, then Quagon may file a new claim. But Quagon has not met her heavy burden to show that the ALJ's decision on her March 2019 application is not supported by substantial evidence. Accordingly, I must affirm the ALJ's decision.

## ORDER

IT IS ORDERED that the decision of defendant Kilolo Kijakazi, Acting Commissioner of Social Security, is AFFIRMED. The clerk of court is directed to enter judgment for defendant and close this case.

Entered this 18th day of January, 2023.

BY THE COURT:

/s/

_____
STEPHEN L. CROCKER
Magistrate Judge